IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LIV GILLETTE and MORGAN OWENS,**<br><br>　　　　　　　　　　**Plaintiffs**,<br><br>v.<br><br>**DEN-TEX CENTRAL, INC.,**<br><br>　　　　　　　　　　**Defendant**. | Case No. 24-2457-DDC-TJJ |

### MEMORANDUM AND ORDER

Plaintiffs Liv Gillette and Morgan Owens allege that defendant Den-Tex Central, Inc. (doing business as Denny's Franchise Restaurants) unlawfully discriminated against them on the basis of race. Defendant filed a Motion to Compel Arbitration (Doc. 5). Plaintiffs responded, conceding that Ms. Owens agreed to arbitrate the dispute but arguing that Ms. Gillette did not. Defendant replied. As explained below, the court grants defendant's motion (Doc. 5) in part and denies it in part. As Ms. Owens concedes, she agreed to arbitrate her claims, and so, the court grants defendant's motion in part. On this record, however, the court denies defendant's request to compel Ms. Gillette to arbitrate her claims. Instead, the court concludes that a summary trial is necessary to determine whether Ms. Gillette assented to arbitration.

### I.     Background

Plaintiffs are former employees of a Denny's franchise in Overland Park, Kansas. Doc. 1 at 1 (Compl. ¶ 4). Both women are Caucasian. *Id.* at 3 (Compl. ¶ 16). They allege that defendant constructively discharged them by yelling at them, retaliating against them for reporting hostile treatment from an African American coworker, and assigning them less

favorable duties.  *Id.* at 5 (Compl. ¶¶ 23, 25–28, 30).  Plaintiffs assert retaliation, discrimination, Fair Labor Standards Act, and Kansas Wage Payment Act claims.  *Id.* at 5–10 (Compl. ¶¶ 34–66).

Defendant argues that plaintiffs signed arbitration agreements with defendant.  Doc. 6 at 2–5; Doc. 5-1 (Gillette Arbitration Agreement); Doc. 5-2 (Owens Arbitration Agreement).  Thus, defendant asserts, plaintiffs must arbitrate their claims.  Doc. 6 at 6.  Ms. Owens concedes these points.  Doc. 7 at 1.  She "does not oppose [d]efendant's motion at all."  *Id.* at 1–2.  So, the court grant's defendant's unopposed Motion to Compel Ms. Owens to arbitrate her claims.

Ms. Gillette, on the other hand, cries foul.  She asserts that the signature on the arbitration agreement that defendant produced isn't hers.  *Id.* at 3–4.  She also attached a declaration to her response brief.  In it, she affirmatively asserts that she's never seen the arbitration agreement that defendant produced and that she didn't sign it.  Doc. 7-1 at 1–2 (L. Gillette Decl. ¶¶ 3–7).  Ms. Gillette asserts that she never learned cursive, and so, when she signs her name, she signs her first name in cursive but prints her last name.  Doc. 7 at 3; Doc. 7-1 at 1–2 (L. Gillette Decl. ¶ 6).  Meanwhile, the signature in the arbitration agreement defendant produced signs both Ms. Gillette's first and last name in cursive.  *See* Doc. 5-1 at 4.  Ms. Gillette also attached pictures of her driver's license and nondriver's license.  Doc. 7-1 at 3.  These licenses purportedly display signatures different from the one that appears on the arbitration agreement defendant submitted.  *Id.*  Finally, she submitted a declaration from her mother, Ronda Gillette.  Doc. 7-2 (R. Gillette Decl.).  In it, Ms. Gillette's mother asserts that she's familiar with her daughter's signature and that the signature in the document that defendant produced isn't her daughter's.  *Id.* at 1 (R. Gillette Decl. ¶¶ 2–4).

With that background, the court turns to the governing legal standard before applying it to the facts of this dispute.

**II.     Legal Standard**

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, requires that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. Section 3 of the FAA permits the court to stay litigation in favor of arbitration. *Id.* § 3. The United States Supreme Court interprets the FAA to establish a strong federal policy favoring arbitration and thus requiring "liberal reading of arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n.27 (1983). But the Supreme Court has clarified that the "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022); *see also id.* (explaining that the policy "'is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts'" (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010))).

When an agreement contains an arbitration clause, "a presumption of arbitrability arises[.]" *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). But, the key word in this sentence is "agreement." That's so "because 'arbitration is a matter of contract' and the authority of an arbitrator arises only from the parties['] agreement to that forum in advance[.]" *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (quoting *AT & T Techs.*, 475 U.S. at 648–49). So, "'a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit.'" *Id.* (brackets omitted) (quoting *AT & T Techs.*, 475 U.S.

3

at 648–49); *see also Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, 12 F.4th 1212, 1219–20 (10th Cir. 2021) (explaining that "the presumption is not a license to override the parties' expressed intent" and so, courts "must not undermine 'the first principle that underscores all the Supreme Court's arbitration decisions:  Arbitration is strictly a matter of consent'" (brackets omitted) (quoting *Granite Rock*, 561 U.S. at 299)).

      The presumption of arbitrability thus "falls away" when the parties dispute whether they have formed a valid and enforceable arbitration agreement with one another.  *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).  A court may compel arbitration "only when satisfied that the making of the agreement to arbitrate is not at issue." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (quotation cleaned up).  When the parties dispute whether an arbitration agreement exists, the party moving to compel arbitration bears a burden like the one faced by a summary judgment movant—the proponent of arbitration must make an initial showing that a valid arbitration agreement exists.  *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012); *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262–63 (D. Kan. 2003) (same); *Phox v. Atriums Mgmt. Co.*, 230 F. Supp. 2d 1279, 1282 (D. Kan. 2002) (same).  If the moving party satisfies this requirement, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material of fact whether the parties have formed an agreement to arbitrate.  *Hancock*, 701 F.3d at 1261; *SmartText Corp.*, 296 F. Supp. 2d at 1263; *Phox*, 230 F. Supp. 2d at 1282.  If the non-moving party "demonstrates [such] a genuine issue of material fact, then a trial on this issue is required." *SmartText Corp.*, 296 F. Supp. 2d at 1263 (citing 9 U.S.C. § 4 (if the making of the arbitration agreement is seriously disputed, then "the court shall proceed summarily to the trial thereof") (further citation omitted)); *see also Howard v. Ferrellgas Partners, L.P.*, 748 F.3d

4

975, 978 (10th Cir. 2014) (explaining that the FAA "calls for summary trial" when "a quick look at the case suggests material disputes of fact . . . exist on the question whether the parties agreed to arbitrate" (emphasis omitted)).

To decide whether the parties agreed to arbitrate their current disputes, courts generally apply "'ordinary state-law principles that govern the formation of contracts.'" *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The court now applies these governing principles to this case.

### III. Analysis[1]

Ms. Gillette has demonstrated that genuine issues of material fact remain on the issue whether she assented to arbitrate her claims. The court thus denies defendant's Motion to Compel her to so arbitrate. The court explains these conclusions.

---

[1] Defendant assumes Kansas law governs this inquiry. *See* Doc. 6 at 8–9. Plaintiffs never address choice of law. *See generally* Doc. 7.

The choice-of-law inquiry "is not so straightforward" when, as here, a federal court exercises federal-question jurisdiction but must resolve state-law issues that are merely incidental to the federal claim. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 862 (9th Cir. 2022) (Baker, J., concurring). The Ninth Circuit has concluded district courts should apply the choice-of-law rules of the forum state. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). And although our Circuit hasn't said so expressly, it too has "assumed that state choice of law rules apply to decide which state's substantive law governs arbitration contracts." *Graddy v. Carnegie Acad., LLC*, 717 F. Supp. 3d 1133, 1144 n.79 (D. Utah 2024) (citing *Howard*, 748 F.3d at 982); *see also Levine v. Vitamin Cottage Nat. Food Mkts., Inc.*, No. 20-cv-00261-STV, 2021 WL 4439800, at *5 (D. Colo. Sept. 27, 2021) (compiling cases where "courts have applied *Klaxon* when analyzing state contract law in the context of determining whether there was a valid arbitration agreement in the context of federal employment claims"). So, the court applies Kansas choice-of-law rules.

"Kansas choice of law principles suggest that the location of 'the last act necessary' to form the contract determines which state law governs their contract formation dispute." *Howard*, 748 F.3d at 982 (first citing *In re K.M.H.*, 169 P.3d 1025, 1031–32 (Kan. 2007); and then citing Restatement (First) of Conflict of Laws § 332 (1934)). Plaintiff worked for defendant at a Kansas location. Doc. 1 at 1 (Compl. ¶ 4). So, it seems likely that the last act necessary to form the arbitration contract took place in Kansas—if it occurred at all. But the court needn't speculate on this point. Where, as here, "a party fails to make 'a clear showing that another state's law should apply,' Kansas choice of law principles require a court to

### 1. Material Issues of Fact Remain

Under Kansas law, "to form a binding contract, there must be a meeting of the minds on all the essential elements." *Unified Sch. Dist. No. 446 v. Sandoval*, 286 P.3d 542, 546 (Kan. 2012). This standard requires an "unconditional and positive acceptance[.]" *Id.* Here, fact issues prevent the court from determining whether Ms. Gillette communicated an "unconditional and positive" acceptance of the arbitration agreement. *Id.* Giving Ms. Gillette "the benefit of all reasonable doubts and inferences[,]" *Hanock*, 701 F.3d at 1261 (quotation cleaned up), a reasonable factfinder could conclude that Ms. Gillette didn't sign the arbitration agreement. A jury could credit Ms. Gillette's declaration (and that of her mother) that the signature on the arbitration agreement produced by defendant is not Ms. Gillette's. In other words, Ms. Gillette has advanced sufficient factual material to raise a "genuine issue of material fact regarding the parties' agreement." *Id.* (quotation cleaned up). The court thus can't compel Ms. Gillette to arbitrate her claims—at least not on the current record.

The court next takes up defendant's arguments opposing this conclusion

### 2. Defendant's Counterarguments

Defendant offers four counterarguments. None is persuasive.

*First*, defendant argues that plaintiff's position is a fraud defense, which she failed to plead with particularity. Doc. 8 at 1–2. The court disagrees. Even assuming that Ms. Gillette must have satisfied Rule 9(b) in alleging fraud, the court finds that she has. "Rule 9(b) requires only the identification of the circumstances constituting fraud[.]" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). The purpose of this rule "is to afford a

---

default to Kansas substantive law." *Howard*, 748 F.3d at 982 (quoting *In re K.M.H*, 169 P.3d at 1032). The court thus applies Kansas law to determine whether the parties here agreed to arbitrate.

defendant fair notice of a plaintiff's claims and the factual grounds supporting those claims." *Goerge v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (quotation cleaned up). Plaintiff affirmatively has attested that defendant never presented the arbitration agreement to her, that she didn't sign the arbitration agreement, and that the signature on the arbitration agreement isn't hers. Doc. 7-1 at 1–2 (L. Gillette Decl. ¶¶ 3–5, 7). True, plaintiff hasn't alleged who in defendant's organization is responsible for her signature appearing on the arbitration agreement or when that alleged forgery took place. But how could she? Where, as here, a plaintiff is unable "to obtain information in the defendant's exclusive control[,]" courts take a more relaxed approach to Rule 9(b)'s requirements. *George*, 833 F.3d at 1255; *see also Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992) ("Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief."). Because plaintiff's brief sufficiently "sets for the factual basis for" her belief that she didn't sign the arbitration agreement, *Scheidt*, 956 F.2d at 967, her papers satisfy Rule 9(b)'s particularity requirement.

The cases defendant cites aren't to the contrary. For instance, in one of those cases, the Tenth Circuit instructed that a plaintiff couldn't avoid an arbitration clause by vaguely alleging that "all of the choice provisions [in the contract] were induced by fraud[.]" *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir. 1992). Instead, *Riley* explained that a "plaintiff seeking to avoid a choice provision on a fraud theory must, within the confines of Fed. R. Civ. P. 9(b) and 11, plead fraud going to the specific provision[.]" *Id.* Here, the arbitration agreement is the whole contract that defendant seeks to enforce. *See* Doc. 5-1. So, plaintiff's argument that she didn't sign the agreement attacks "the specific provision" at issue. *Riley*, 969 F.2d at 960.

7

What's more, the remedy defendant seeks—requiring Ms. Gillette to arbitrate her claims—doesn't follow from defendant's particularity argument. *Cf.* 5A *Wright & Miller's Federal Practice and Procedure* § 1300 (4th ed. updated May 2025) ("[I]n most instances, when a motion based on a lack of sufficient particularity under Rule 9(b) is granted . . . it will be with leave to amend the deficient pleading."). That is, even if Ms. Gillette should have pleaded her forgery allegations with greater particularity, the court can't require her to arbitrate her claims unless it's satisfied that she so agreed. *See Sanchez*, 762 F.3d at 1146. The court's review of similar cases—ones where plaintiffs alleged that they didn't sign the arbitration agreement—didn't reveal any opinions compelling arbitration on the basis of insufficient particularity. *See, e.g.*, *Schoendorf v. Toyota of Orlando*, No. 08-cv-767-Orl-19DAB, 2009 WL 1075991, at *4–6 (M.D. Fla. Apr. 21, 2009) (finding "genuine issue that there was no valid agreement to arbitrate" where plaintiff alleged signature on arbitration agreement wasn't hers); *Levine*, 2021 WL 4439800, at *9, *12–13 (analyzing argument that plaintiff didn't sign arbitration agreement separately from argument that agreement was "obtained by fraud"); *Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 818–21 (E.D. Ark. 2019) (finding plaintiff failed to create a genuine issue of material fact about whether he had signed arbitration agreement); *Valenzuela v. GK Nevada LLC*, No. 23-cv-01477-GMN-BNW, 2024 WL 3460247, at *5–6 (D. Nev. June 26, 2024) (holding plaintiff "fail[ed] to raise a genuine issue of material fact" over "whether he signed the arbitration agreement" after receiving handwriting expert testimony).

In a nutshell, defendant's particularity argument falls short. Plaintiff has adduced sufficient allegations at this point to avoid a summary order compelling arbitration.

*Second*, defendant alleges that plaintiff signed a separate onboarding checklist, where she acknowledged signing the arbitration agreement. Doc. 8 at 2–3; Doc. 8-1. This argument also

falters. Defendant offered this document for the first time in its reply brief, so the court can't rely on it. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003) (holding district court abused its discretion when "it relied on new evidentiary materials presented for the first time" in a reply brief). The onboarding checklist also contains a signature that appears similar to the signature on the arbitration agreement defendant produced. *Compare* Doc. 5-1 at 4, *with* Doc. 8-1 at 1. Perhaps plaintiff also would deny signing the onboarding checklist. More fundamentally, however, viewing the evidence in the light most favorable to Ms. Gillette, a reasonable trier of fact could conclude that she didn't sign the arbitration agreement, notwithstanding the existence of the onboarding checklist. In short, even accounting for the onboarding checklist, Ms. Gillette has offered sufficient evidentiary support to raise a genuine issue of material fact about whether she signed the arbitration agreement.

Defendant's *third* and *fourth* arguments fail for the same reason. Defendant argues that plaintiff's argument isn't credible because she signed her first name in cursive, which proves that she knows some cursive. Doc. 8 at 3. And defendant argues that the declaration from plaintiff's mother is biased. Doc. 8 at 4. These are issues, but they are ones assigned to the trier of fact. To be sure, a rational factfinder could agree with defendant's arguments and conclude that the signature on the arbitration agreement belongs to plaintiff. But on this record—and this is the critical part—a rational factfinder reasonably could find that plaintiff didn't sign the arbitration agreement. Genuine issues of material fact thus remain.

In sum, the court rejects defendant's counterarguments. Viewing the evidence in the light most favorable to Ms. Gillette, a reasonable jury could conclude that she didn't sign the arbitration agreement that defendant produced. A trial on that issue is necessary.

### 3. Summary Trial

While the case law is not rich with guidance, precedent from our Circuit lights the path forward. The court shouldn't deny defendant's Motion to Compel Arbitration based on its inconclusive showing. Instead, the court must proceed to a second phase of the analysis. *Howard*, 748 F.3d at 978 (holding district court erred by denying arbitration outright when moving papers revealed dispute about arbitrability). Specifically, *Howard* and the FAA instruct district courts to "proceed summarily to the trial" on the facts relevant to arbitrability. *Id.* at 977 (citing 9 U.S.C. § 4). Likewise, *Howard* makes clear, the court should get on with this "summary trial" quickly. *Id.* at 978 (emphasis omitted). The court should not delay the summary trial, nor should it allow the parties to engage in "death by discovery" on this threshold question. *Id.* Indeed, *Howard* directs the court to sponsor an efficient and summary process "so the parties can get on with the merits of [litigating] their dispute in the right forum." *Id.* This is precisely what our court has done in the past, albeit before *Howard* provided such clear rules of the road. *See SmartText Corp.*, 296 F. Supp. 2d at 1263.

Consistent with these directives, the court denies defendant's Motion to Compel Arbitration—as it pertains to Ms. Gillette—pending a summary trial on the question of arbitrability. Also, because a summary trial is necessary, the court denies defendant's request to stay and administratively close this case. *See* Doc. 6 at 13. Finally, the court directs defense counsel to: (a) notify Magistrate Judge James of this decision; (b) request a conference with her about the scheduling and case management implications of this ruling.

## IV.     Conclusion

Ms. Owens has conceded that she signed an arbitration agreement with defendant. So, the court grants defendant's Motion to Compel Ms. Owens to arbitrate her claims. Ms. Gillette, on the other hand, has raised a genuine issue of material fact about whether she signed an

arbitration agreement with defendant. The court must conduct a summary trial to resolve that question. The court thus denies defendant's Motion to Compel Ms. Gillette to arbitrate her claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Den-Tex Central, Inc.'s Motion to Compel Arbitration (Doc. 5) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** the court will conduct a summary trial to decide the issue whether a valid arbitration agreement exists between plaintiff Liv Gillette and defendant Den-Tex Central, Inc. that encompasses the disputes at issue in this case. Consistent with this Order, the court directs defense counsel to notify Magistrate Judge James of this Order and request a conference with her about the scheduling and case management implications of this ruling.

**IT IS SO ORDERED.**

**Dated this 1st day of July 2025, at Kansas City, Kansas.**

                                                                    s/ Daniel D. Crabtree
                                                                     **Daniel D. Crabtree**
                                                                     **United States District Judge**